IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| KENDRICK DEJUAN WATSON, | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-2852-STA-egb |
| | ) | |
| CITY OF MEMPHIS; WILLIAM | ) | |
| ACRED, Detective; JONATHAN | ) | |
| OVERLY, Detective; PAUL | ) | |
| HAGGARMAN, States Attorney; | ) | |
| ROBERT PARRISH, Defense Attorney; | ) | |
| LEE V. COFFEE, Criminal Court Judge of | ) | |
| the Thirtieth Judicial District, Division 7 | ) | |
| | ) | |
|   Defendants. | ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On October 28, 2016, Plaintiff Kendrick Dejuan Watson ("Watson"), who at the time was a pre-trial detainee at the Shelby County Criminal Justice Complex in Memphis, Tennessee, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2). On November 21, 2016, the Court granted Watson leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) The Clerk shall record the Defendants as the City of Memphis,[1] Memphis Police Department ("MPD") Detective William

---

[1] The Court construes the claims against the Memphis Police Department as claims against the City of Memphis itself. The Clerk is **DIRECTED** to remove the Memphis Police Department as a defendant and add the City of Memphis as a party.

Acred, MDP Detective Jonathan Overly, States Attorney Paul Haggarman, Defense Attorney Robert Parrish, and Criminal Court Judge Lee V. Coffee of the Thirtieth Judicial District, Division 7.

## BACKGROUND

On February 20, 2014, a grand jury in Shelby County, Tennessee, returned indictments against Watson in three separate cases. *See* http://jssi.shelbycountytn.gov. Indictment no. 14-00909 charged Watson with especially aggravated robbery, especially aggravated kidnapping, aggravated assault, and conspiracy to commit especially aggravated kidnapping. (*Id.*) Indictment no. 14-00910 charged Watson with being a convicted felon in possession of a firearm. (*Id.*) Indictment no. 14-00911 charged Watson with one count of conspiracy to unlawfully possess a controlled substance with the intent to sell marijuana, one count of conspiracy to unlawfully possess a controlled substance with the intent to sell cocaine, and one count of money laundering. (*Id.*) On July 26, 2017, Watson pled guilty to aggravated assault in case no. 14-00909, being a convicted felon in possession of a firearm in case no. 14-00910, and conspiring to unlawfully possess a controlled substance with the intent to sell marijuana in case no. 14-00911. (*Id.*)

In his Complaint, Watson alleges that in the course of their investigation into Watson's activities, both Defendants Det. Overly and Det. Acred used illegally gathered evidence in order to obtain a wiretap. (Compl. at 2, ECF No. 1.) According to Watson, on November 1, 2013, Defendant Det. Overly made an affidavit in support of an application for a wire tap. (*Id.*) Det. Overly's affidavit stated that he had received a Suspicious Activity Report (SAR) from Orion Federal Credit Union. (*Id.*) Watson claims that his attorney was told that the SAR would be submitted to him first, and only after counsel was made aware of it would the SAR go to the

FicCEN (Financial Crimes Enforcement Network). (*Id.* at 2-3.) The Complaint does not allege who gave Watson's attorney this assurance, though it appears it was the fraud prevention manager at the credit union. The Complaint goes on to allege that the fraud prevention manager at the credit union informed Watson's attorney that the credit union was prohibited by law from disclosing the existence of a SAR to MPD. (*Id.* at 3.) Watson alleges that Det. Overly's warrant affidavit cited the SAR as part of the warrant application but did not disclose to the judge that MPD was not supposed to possess or even know the SAR existed. (*Id.*)

Watson further alleges that Det. Overly's affidavit falsely stated that Watson had texted a photo of Det. Acred's license plate to several of Watson's associates to avoid or interfere with the police surveillance. (*Id.*) Watson now contends that his girlfriend texted a picture and that the detectives could not have known this information without illegally monitoring Watson's phone. (*Id.* at 3-4.) As relief, Watson seeks compensatory damages from the City of Memphis. (*Id.* at 5).

In his Amended Complaint, Watson alleges that Defendant Haggarman knew that MPD falsified information and used illegal information to obtain the wiretap and pursued the prosecution against Watson anyway. (Amended Compl. at 1, ECF No. 7.) According to Watson, Judge Coffee also knew that MPD had acted improperly; however, he allowed the case to proceed and denied Watson's motion to suppress. (*Id.*) Watson questions the effectiveness of Defendant Parrish's representation and alleges that he has filed a bar complaint against Parrish. (*Id.* at 1-2.)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the Court applies the Federal Rules of Civil Procedure 12(b)(6) pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations

and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quotation omitted); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants.").

## ANALYSIS

Watson filed his initial Complaint on the official form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150

5

(1970). Watson seeks to hold the City of Memphis, two MPD detectives, the prosecuting attorney, his own defense attorney, and the presiding trial judge liable for the alleged violation of his constitutional rights. The Court concludes, however, that Watson has failed to state a plausible claim for relief against any of these Defendants. The Court analyzes each claim in turn.

## I. Statute of Limitations

As a threshold matter, Watson's claims against the City of Memphis and Det. Acred and Det. Overly are facially time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations found in Tennessee Code Annotated § 28-3-104(a). *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). A claim based on an unlawful search and seizure accrues on the date of the search. *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008). Here, the affidavit containing the information which the MPD had allegedly gathered in violation of Watson's rights was signed on November 15, 2013. The allegedly improper investigation conducted by Det. Acred and Det. Overly must have occurred before that date. As a result, the statute of limitations began to run no later than November 15, 2013, and expired one year later, on November 15, 2014. Watson signed his Complaint almost two years later on October 26, 2016. (Compl. at 3, ECF No. 1.) The Court concludes then that Watson's claims against the City of Memphis, Acred, and Overly are now time barred. Therefore, the Complaint against these Defendants must be **DISMISSED**.

## II. Claims against the Attorneys

The Complaint also fails to state a plausible claim for relief against the prosecuting attorney in Watson's case or his defense attorney. Watson cannot sue Defendant Haggarman for money damages arising from the institution of criminal proceedings against him. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). Watson's claim for money damages against Defendant Haggarman for these activities is barred by absolute prosecutorial immunity. *Id.* at 427-28; *Burns v. Reed*, 500 U.S. 478, 490-492 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). This includes any claim against Haggarman for malicious prosecution. *O'Neal v. O'Neal*, 23 F. App'x 368, 370 (6th Cir. 2001); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (noting that "prosecutors are absolutely immune from many malicious prosecution claims"); *Roybal v. State of Tenn. Dist. Attorney's Office*, 84 F. App'x 589 (6th Cir. 2003).

Watson likewise has no constitutional tort claim against Defendant Parrish. Courts have uniformly held that criminal defense attorneys are not state actors who can be sued under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amendable to suit under § 1983."); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968)

(private attorney who is appointed by the court does not act under color of state law); *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (per curiam) (attorney appointed by federal court is not a federal officer who can be sued under *Bivens*). Thus, Watson's claims against Defendants Haggarman and Parrish are **DISMISSED**.

### III. Claims against Judge Coffee

This leaves Watson's claim against Judge Coffee. It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for the application of absolute judicial immunity is whether the judicial officer is performing "the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). Watson alleges that Judge Coffee wrongly denied Watson's motion to suppress and otherwise acquiesced in the MPD's improper conduct, actions which clearly implicate Judge Coffee's judicial function. The Court concludes that Judge Coffee enjoys absolute judicial immunity from these claims. Therefore, Watson's Complaint is **DISMISSED** as to Judge Coffee.

### IV. Claims Precluded by *Heck*

In the alternative, the Court holds that any claim for money damages arising from Watson's allegedly unlawful prosecution or imprisonment is premature. The Supreme Court held in *Heck v. Humphrey* that a prisoner has no cause of action under § 1983 if the claims in that action hinge on factual proof that would call into question the validity of a state court order

directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994).

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87 (footnotes omitted). Watson has not shown that the underlying criminal prosecution was terminated in his favor, that his conviction was set aside, or that his confinement was declared illegal. Thus, Watson's claims for money damages are premature under *Heck*.

## **LEAVE TO AMEND**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). But in this case, the Court concludes that leave to amend is not warranted because Watson cannot cure the defects identified by the Court. Watson's claims are facially time-barred, brought against Defendants with immunity from suit, or barred by *Heck*. Any amendment would be futile.

**CONCLUSION**

The Court **DISMISSES** Watson's Complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is **DENIED** because the deficiencies in Watson's Complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Watson in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on a defendant but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is **CERTIFIED**, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Watson would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Watson nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Watson is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2)

by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For purposes of 28 U.S.C. § 1915(g), this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

**IT IS SO ORDERED**.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 19, 2018.